**Slip Op. 26-114**

**UNITED STATES**
**COURT OF INTERNATIONAL TRADE**

**Court No. 24-00130**

DITAR, S.A.,

*Plaintiff*,

v.

UNITED STATES,

*Defendant*,

and

COALITION FOR FAIR TRADE
IN SHOPPING BAGS,

*Defendant-Intervenor*.

Before: M. Miller Baker, Judge

**OPINION**

[Sustaining the Department of Commerce's remand results.]

Dated: September 15, 2026

*Robert G. Gosselink*, *Jonathan M. Freed*, *Kenneth N. Hammer*, and *MacKensie R. Sugama*, Trade Pacific PLLC, Washington, DC, on the comments for Plaintiff.

*Rebecca T. Mitchell*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, on the comments for Defendant.

Of counsel for Defendant was *Paul Thornton*, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, Washington, DC.

*J. Michael Taylor* and *Daniel L. Schneiderman*, King & Spalding LLP, Washington, DC, on the comments for Defendant-Intervenor.

*Baker*, Judge: This case involving an antidumping duty investigation of paper bags imported from Colombia returns from a court-ordered remand. *See Ditar, S.A. v. United States*, Slip Op. 25-128, 2025 WL 2795057 (CIT 2025) (Remand Op.).[1]

Briefly summarized, Ditar, a Colombian producer, sought a "level-of-trade" adjustment to its home-market price for purposes of calculating its antidumping margin. Commerce denied it, reasoning that "the company failed to demonstrate either a difference in the level of trade in its home-market sales or any significant effect on price comparability stemming from the asserted disparity." *Id.* at 10, 2025 WL 2795057, at *4. Both are required under the statute. *See id.* at 3, 2025 WL 2795057, at *1 (citing 19 U.S.C. § 1677b(a)(7)(A)(i), (ii)).

As to the first issue, the court remanded for the Department to "review Ditar's indirect selling expenses and reconsider the company's claims that intensity differences in [warehousing and repacking expenses]

---

[1] The court presumes the reader's familiarity with its previous decision.

show a difference in levels of trade." *Id.* at 14–15, 2025 WL 2795057, at *6.

And for the second, the court instructed the agency to justify its assertion that the pricing differential between Ditar's distributor and end-user sales was not "significant." *Id.* at 20–22, 2025 WL 2795057, at *8.

On remand, Commerce provided additional reasons for its finding that the company failed to show a difference in the level of trade. *See* Appx8696–8698; Appx8705–8712. It declined to take up the pricing differential question, reasoning that it was unnecessary to decide in view of its disposition of the former issue. Appx8698–8700; Appx8713–8716.

Ditar now challenges both aspects of the agency's redetermination.

I

There are two ways to establish different levels of trade. The applicant may show either that the sales were "made at different marketing stages" or that they were made at the "equivalent" of such stages. 19 C.F.R. § 351.412(c)(2). The difference between "different marketing stages" and "the equivalent" is that the former requires merchandise to change hands twice, while the latter does not. *See* 62 Fed. Reg. 27,296, 27,371; *see also* Remand Op. at 4, 2025 WL 2795057, at **1–2. In either case, "[s]ubstantial differences in selling activities are a necessary, but not sufficient, condition for determining that there is a difference." 19 C.F.R. § 351.412(c)(2).

Because Ditar admits that its Colombian sales did not involve shopping bags changing hands twice, the question is whether it showed "the equivalent" of different marketing stages. Remand Op. at 12, 2025 WL 2795057, at **4–5. To do that, it had to demonstrate that it took on a role comparable to that of a reseller by engaging in "an additional layer of selling activities, amounting in the aggregate to a substantially different selling function." 62 Fed. Reg. at 27,371.

On initial review, the court sustained Commerce's finding that the record did not establish such substantial differences in selling functions because Ditar failed to show an intensity of sales functions and support out of proportion to the relative volume of the two types of sales. Remand Op. at 13, 2025 WL 2795057, at *5. But the company also argued that its warehousing and repacking expenses for home-market end-user customers were more intensive than they were for distributors, and it explained that it reported those amounts as indirect selling expenses. *Id.* at 14–15, 2025 WL 2795057, at **5–6. The court remanded because, while the Department found fault with Ditar's inclusion of the expenses in the indirect category, the government did not dispute that the company had classified them properly. *Id.*

On remand, Commerce found that the warehousing and repacking expense data on the record were inadequate to allow the agency "to further evaluate or corroborate" Ditar's claims that its end-user sales were at a significantly higher intensity than its distributor sales. Appx8696. While the supporting information identified various subaccounts, none of them

specifically reflected warehousing or repacking services, and there was no transaction-specific detail supporting an evaluation of the total expenses incurred. Appx8696–8697. And there was no detail about specific transactions to corroborate Ditar's assertion that the expenses were incurred only for end-user sales, much less at the reported intensity. Appx8697.

The Department acknowledged that the lack of detail was not the company's fault, observing that indirect selling expenses are, by definition, indirect. *Id.* That is, the problem was not with the reporting itself. Rather, it was because indirect selling expenses are "allocated to all sales regardless of channel" of sale, such that "their inclusion detracts from Ditar's ability to substantiate the claims regarding the applicability of these sales functions to only one channel and the intensity level claimed." Appx8697–8698. In other words, the non-specific nature of indirect selling expenses meant they failed to support the company's claims.

Ditar argues that the Department failed to explain why the warehousing and repacking services do not support finding different levels of trade. ECF 50, at 19. But as the party seeking a level-of-trade adjustment, it had the burden of "demonstrat[ing] the appropriateness of such adjustment." *Statement of Administrative Action Accompanying the Uruguay Round Agreements Act* (SAA), H.R. Doc. 103–316, vol. 1, at 829, 1994

U.S.C.C.A.N. 4040, 4216.[2] Ditar appears to presume that it should receive an adjustment unless the agency proves otherwise.

In any event, the company also argues that its questionnaire responses establish that it performed "numerous additional selling functions for end user customers" that it did not perform for distributors and that it properly reported them as indirect selling expenses based on the questionnaire's instructions. ECF 50, at 19–20. As to the latter point, Commerce agreed that the reporting was proper. *See* Appx8697 ("That these claimed expenses cannot be identified *does not undermine the indirect selling expenses reporting*.") (emphasis added).

But as to the former, the Department found no evidence in the record to substantiate Ditar's claim that it performed "numerous additional selling functions" for the end users. This is why, according to the agency's reasoning, the indirect selling expenses are problematic—not because it was wrong to include various amounts in that category, but because "indirect" expenses apply "to all sales *regardless of channel*." Appx8697–8698 (emphasis added). Commerce's point was that indirect selling expenses by their nature cannot corroborate, or "inform consideration of," the company's claim about the intensity levels of its sales

[2] The SAA "shall be regarded as an authoritative expression by the United States concerning the interpretation of the Uruguay Round Agreements and this Act in any judicial proceeding in which a question arises concerning such interpretation or application." 19 U.S.C. § 3512(d).

activities or whether the transactions were at different levels of trade. Appx8698.

Ditar repeatedly protests that it did not perform various selling activities *at all* for home-market distributor customers. *See* ECF 50, at 19, 20, 23, 24–25. It fails, however, to respond to Commerce's conclusion that the indirect sales expenses do not "substantiate the claims regarding the applicability of these sales functions to only one channel." Appx8697. In other words, the Department found the record did not support the company's underlying claim. The government puts it well: "In essence, although Ditar claims that its warehousing and repacking services were only provided to end users . . . , Commerce reviewed the record *to see if that claim was supported* and, based on the account information, determined that it was not."[3] ECF 57, at 21 (emphasis added).

That alone is reason to sustain the remand results. The company makes several arguments based on other record evidence, including internal correspondence, that it calls "source documentation." *See* ECF 50, at 21–23. But the court directed the Department to "review Ditar's indirect selling expenses and reconsider

[3] Viewed differently, Ditar's theory seems to be that it is a given that the services were provided only to end users simply because it says so. As a result, the apparent argument goes, *any level* of such services is at a higher level of intensity when compared to zero. The entity seeking the adjustment, however, must prove the nature of its sales activity. *See* SAA at 829, 1994 U.S.C.C.A.N. at 4168. The agency's point is that the record does not substantiate the company's assertion.

the company's claims that intensity levels in these two categories show a difference in levels of trade." Remand Op. at 14–15, 2025 WL 2795057, at *6. That's what the agency did.

And while the company claims that it was "erroneous" for Commerce to focus on its accounting system, ECF 50, at 21, the Department correctly observed (*see* Appx8707–8708) that its instructions on remand were to reconsider the warehousing and repacking expenses reflected in that system. Remand Op. at 14, 2025 WL 2795057, at *6 ("As the government does not contest that Commerce simply misunderstood its own data reporting requirements *for repacking and warehousing expenses*, remand is necessary.") (emphasis added).

In sum, the Department's conclusion that Ditar failed to establish that its home-market sales to its two types of customers (distributors and end users) were made at different levels of trade is supported by substantial evidence, so the court sustains it.

II

In its original decision, the court observed that the agency found the price differential between distributor and end-user sales "insufficient" to warrant a level-of-trade adjustment but neither explained why nor responded to Ditar's argument that the difference was significant. *See* Remand Op. at 21–22, 2025 WL 2795057, at *8. The court remanded "to allow the agency to connect the dots," *id.*, which in context meant it needed to "articulate a satisfactory explanation . . . including a rational connection between the

facts found and the choice made," *id.* (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

In response, Commerce explained that the statute imposes two prerequisites for a level-of-trade adjustment. There must be a difference in level of trade that involves the performance of different selling activities. Appx8698; 19 U.S.C. § 1677b(a)(7)(A)(i). The difference, in turn, must affect price comparability. Appx8698; 19 U.S.C. § 1677b(a)(7)(A)(ii).

The Department observed that "the record does not reflect that Ditar's sales are made at different marketing stages nor are there substantial differences in selling activities." Appx8700. "Because Ditar failed to establish one of two statutorily required criteria for [a level-of-trade] adjustment, even if Commerce were to agree with [the company] on the issue of price comparability, [it] could not lawfully grant" the adjustment. Appx8715–8716. In other words, because Ditar could not establish that its home-market sales to its two types of customers were made at different levels of trade, the price-differential issue was irrelevant.

The company argues that the Department failed "to provide a meaningful or satisfactory answer to the Court's question and instructions." ECF 50, at 11. It asserts that the agency was obligated to address the price differential's significance.

The government answers that Commerce did address the issue by explaining why the price-

differential question was irrelevant. ECF 57, at 34 (citing Appx8715–8716).

The court agrees with the government. Because the Department reasonably explained that Ditar failed to show two levels of trade, it was unnecessary for the agency to decide whether the price differential was significant. As the court observed in its initial decision, the company had the burden to demonstrate *both* "a difference in the level of trade" and that such "difference has an effect on the comparability of prices." Remand Op. at 5, 2025 WL 2795057, at *2 (quoting 19 C.F.R. § 351.412(a)). Ditar having failed to satisfy the first of those requirements, the agency reasonably declined to consider the second.

Under these circumstances, it would be pointless for the court to require the agency to address the price differential. In military terms, it would be overkill. "The law does not require a vain and useless thing . . . ." *McMicking v. Shields*, 238 U.S. 99, 103 (1915).

* * *

For these reasons, the court sustains Commerce's redetermination. A separate judgment will issue. *See* USCIT R. 58(a).

Dated: September 15, 2026 /s/ *M. Miller Baker*
New York, NY Judge